IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | § | |
| Plaintiffs, | § | |
| V. | § | No. 3:25-cv-2885-L-BN |
| SOUTHWEST AIRLINES CO., | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO SEVER AND STAY CLAIMS**

Defendant Southwest Airlines Co. has filed a motion to sever and stay Plaintiff Intellectual Ventures I LLC and Intellectual Ventures II LLC's (collectively, "Intellectual Ventures") claims of patent infringement regarding U.S. Patent No. 11,032,000 (the "'000 Patent") based on the customer-suit exception. *See* Dkt. No. 121.

Having considered the record, the Court grants the motion to sever and stay [Dkt. No. 121]. *See Gonzales v. Allstate Vehicle & Prop. Ins. Co.*, No. 6:17-cv-58-RP-JCM, 2017 WL 4678238, at *1 (W.D. Tex. Oct. 17, 2017) ("Although the Fifth Circuit has never decided whether a motion to sever and abate is a nondispositive matter for the purposes of 28 U.S.C. § 636(b) and [Federal Rule of Civil Procedure] 72, this Court construes motions to sever as nondispositive under those provisions for the following reasons.").

**Background**

This lawsuit, filed on November 2, 2024, concerns several patents held by

Intellectual Ventures, including the ‘000 Patent. *See* Dkt. No. 97 at 1. (The Court's citations to page numbers in the record refer to document page numbers, which may differ from labeled page numbers or Bates numbers.)

Intellectual Ventures alleges, in part, that Southwest infringed the ‘000 Patent by using an Aircraft Interface Device ("AID") called AvioCast. *See* Dkt. No. 97-14. The AvioCast is not produced by Southwest. *See* Dkt. No. 123 at 33-34. Instead, the AvioCast device is produced by a company called AvioVision N. V. ("AvioVision"), and Southwest purchases AvioCasts from AvioVision. *See id.*

On February 4, 2026, AvioVision filed a complaint for declaratory relief in the District of Delaware (the "Delaware Action"). *See id.* at 7-20. AvioVision seeks a judgment that its products do not infringe the ‘000 Patent and that the claims of the ‘000 Patent are invalid. *See id.*

On March 6, 2026, Southwest moved to sever the ‘000 Patent claims from this lawsuit and to stay the severed action pending the resolution of the Delaware Action. *See* Dkt. No. 121. Southwest argues that both the customer-suit exception and traditional stay factors warrant severing and staying the ‘000 Patent claims. *See generally id.*

Before the motion was filed, this lawsuit was transferred to this district from the Western District of Texas and consolidated with another case. *See* Dkt. Nos. 80 & 88.

The Court ordered the parties to confer and proposed new pre-trial deadlines and a new trial date. *See* Dkt. No. 120. The Court has since entered an Initial

Scheduling Order in this matter, setting several scheduling dates but not setting a trial date. *See* Dkt. No. 131.

The Court has also set a claim construction hearing in this matter for September 24, 2026, *see* Dkt. No. 158, and the parties have begun filing their claim construction briefs, *see, e.g.*, Dkt. Nos. 165-167.

Briefing on the motion to sever is now complete. *See* Dkt. Nos. 121-123, 129, and 132.

## Legal Standards

### I. <u>Severing Claims</u>

Federal Rule of Civil Procedure 21 provides that a court may "sever any claim against a party." Under Rule 21, a "district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice." *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 574 (5th Cir. 1995).

But a court may also sever a claim "when there are sufficient other reasons for ordering a severance." *Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-cv-325-JRG, 2016 WL 9275395, at *4 (E.D. Tex. Oct. 19, 2016) (citing *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968)). Generally, "[a] district court has wide discretion to sever a claim against a party into separate cases, in vindication of public and private factors." *In re Rolls Royce Corp.*, 775 F.3d 671, 680 (5th Cir. 2014) (citations omitted). "[S]everance will be refused if the court believes that it only will result in delay, inconvenience, or added expense." *Id.* at 680 n.40 (citing 7 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1689 (3d ed.

2004)).

The movant bears the burden in seeking severance under Rule 21. *See Charalambopoulos v. Grammer,* No. 3:14-cv-2424-D, 2016 WL 5942225, *4-*5 (N.D. Tex. Oct. 13, 2016).

"Severance under Rule 21 creates two separate actions or suits where previously there was but one. Where a single claim is severed out of a suit, it proceeds as a discrete, independent action, and a court may render a final, appealable judgment in either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other." *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983).

## II. Staying Proceedings

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and the effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The Court therefore has a "discretionary power to stay proceedings before it in the control of its docket and in the interests of justice," *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982).

But, although the Court possesses "broad discretion in this area, such control is not unbounded." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). "Proper use of this authority calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Id.* (quoting *Landis*, 299 U.S. at 254-55).

Courts consider three factors on a motion to stay: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Unicorn Global, Inc. v. Golabs, Inc.*, No. 3:19-cv-754-N-BT, 2020 WL 9076548, at *1 (N.D. Tex. Oct. 7, 2020) (citing *Rembrandt Wireless Tech., LP v. Apple, Inc.*, No. 2:19-cv-25-JRG, 2019 WL 6344471, at *2 (E.D. Tex. Nov. 27, 2019)).

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). "The party seeking a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Charalambopoulos*, 2018 WL 514253, at *1 (cleaned up).

**Analysis**

Southwest invokes the customer-suit exception and traditional stay factors to argue that the '000 Patent claims should be severed and stayed while the Delaware Action is litigated. *See* Dkt. No. 121. It contends that it is merely a "downstream" user of AvioVision's products, and, so, given the pending Delaware Action, proceeding against Southwest in parallel would be inefficient and duplicative. Dkt. No. 122 at 5.

Intellectual Ventures contends that the customer-suit exception does not apply because AvioCast is not the only source of the accused infringing product regarding patent infringement of the '000 Patent. *See* Dkt. No. 129 at 8. Intellectual Ventures further argues that the traditional stay factors do not support granting severing and

staying the claims regarding the ‘000 Patent. *See id.* at 11.

On the record before the Court, the Court finds that the ‘000 Patent claims should be severed and stayed under both the customer-suit exception and the traditional stay factors.

## I. <u>Customer-Suit Exception</u>

“The ‘customer-suit exception’ is an exception to the first-to-file rule ‘whereby litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.’” *Unicorn Global*, 2020 WL 9076548, at *1 (quoting *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990)). “[C]ourts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum. *SITO Mobile R&D IP, LLC v. SFA Holdings Inc.*, No. 1:23-cv-688-RP, 2024 WL 3843804, at *1 (W.D. Tex. Apr. 19, 2024) (quoting *Spread Spectrum Screening v. Eastman Kodak Co.*, 657 F.3d 1349, 1356 (Fed. Cir. 2011)). “The customer-suit exception applies where a plaintiff has no claim against the customer of an accused product without prevailing on their infringement claims against the manufacturer of the accused product.” *Slick Slide LLC v. NKDZ DFW, LLC* No. 4:23-cv-643-O, 2024 WL 733641 (N.D. Tex. Feb. 19, 2024), at *2. “This occurs where customer-defendants are ‘mere purchasers’ of the accused product such that they “can add little in the way of how the product works.” *Id.*

Courts in the Fifth Circuit have consistently found that the first customer-suit exception factor weighs in favor of a stay where a customer-defendant is accused of

merely using, operating, or promoting an accused product that had been developed and supplied by a third-party. *See, e.g., Topia Tech., Inc. v. Dropbox, Inc.*, No. 6:21-cv-1373-ADA, 2022 WL 18109619, at *4 (W.D. Tex. Dec. 29, 2022) (finding the first factor favored applying the customer-suit exception because the plaintiff only accused the defendants of "using or promoting" the manufacturer's accused products.); *GreatGigz*, 2022 WL 1037114, at *3 (finding the first factor favored applying the customer-suit exception because the complaint was "predicated entirely on Defendants' use of the supplier's product"); *Lighthouse Consulting Group, LLC v. Truist Bank*, No. 2:19-cv-03340-JRG, 2020 WL 6781977, at *2 (E.D. Tex. Apr. 7, 2020) (finding the first factor favored applying the customer-suit exception because the defendants did not develop or create the accused technology, but merely licensed it from the actual developer and supplier).

Courts analyze three factors when determining whether the customer-suit exception applies: (1) whether the customer-defendant is merely a customer or reseller of the product; (2) whether the customer-defendant "agrees to be bound by any decision" in the manufacturer's case "that is in favor of the patent owner"; and (3) "whether the manufacturer is the only source of the infringing product." *CyWee Grp. Ltd. v. Huawei Device Co. Ltd.*, No. 2:17-cv-495-WCB, 2018 WL 4002776, at *5 (E.D. Tex. Aug. 22, 2018) (cleaned up). But "the Court does not apply the factors in a mechanical or precise manner." *Id.* (cleaned up).

Instead, "courts adopt 'a flexible approach in order to assess whether judicial resources will be saved.'" *Slick Slide LLC v. NKDZ DFW, LLC* No. 4:23-cv-643-O,

2024 WL 733641 (N.D. Tex. Feb. 19, 2024), at *2 (quoting *Vantage Point Tech., Inc. v. Amazon.com, Inc.*, No. 2:13-cv-909-JRG, 2015 WL 123593, at *2 (E.D. Tex. Jan. 6, 2015)). "At the heart of this flexible inquiry is 'whether the issues and parties are such that the disposition of one case would be dispositive of the other.'" *Id.* (quoting *Katz v. Lear Siegler*, Inc., 909 F.2d 1459, 1464 (Fed. Cir. 1990)).

Here, the Court finds that all three customer-suit exception factors weigh in favor of staying the '000 Patent claims.

**A. Whether Southwest is a mere user of the accused product.**

Southwest argues that it is merely a user of the only specifically accused product – the AvioCast. *See* Dkt. No. 122 at 9. Southwest contends and presents evidence that it does not design, develop, or modify AvioCast devices. *See* Dkt. No. 123 at 33-34. Rather, it argues that it simply purchases and uses the AvioCast. *See id.*

Intellectual Ventures does not, in its response, address this factor, beyond its argument that Southwest's claim that it is a "mere user" addresses only design control. *See* Dkt. No. 129 at 9.

The Court finds that Southwest has met its burden to show that it is merely a downstream user of the AvioCast devices. And, so, with respect to the specifically accused AvioCast devices, this factor weighs in favor of a stay.

**B. Whether Southwest agrees to be bound by the Delaware Action.**

"Southwest agrees to be bound" by the findings in the declaratory judgments in the Delaware Actions regarding AvioVision's products. Dkt. No. 121 at 1.

This factor weighs in favor of staying the claims. *See SITO Mobile*, 2024 WL 3843804, at *3.

**C. Whether AvioVision is the sole source of the accused functionality.**

Southwest contends that the only alleged infringing device that is identified by Intellectual Ventures is the AvioCast device that is provided solely by AvioVision. Dkt. No. 122 at 10-11.

Intellectual Ventures disputes this argument and asserts that the customer-suit exception does not apply because the AvioCast is not the only source of the accused infringing product. *See* Dkt. No. 129 at 8-9. Instead, Intellectual Ventures has alleged that the AvioCast is just one possible accused device that infringes the '000 Patent. *See id*. Intellectual Ventures argues that the basis of infringement of the '000 Patent stems from Sounding Reference Signals and that this functionality is part of a "3GPP" standard that is implemented by the AvioCast Aircraft Interface Device but that may also be implemented by other devices used by Southwest. *Id*. And Intellectual Ventures asserts that it intends to propound discovery to Southwest in an attempt to identify the other unknown possible accused infringing devices. *Id*.

In other words, Intellectual Ventures asserts that Southwest might implement the accused functionality in devices that are provided from sources other than AvioVision. *See id*. And, so, according to Intellectual Ventures, this factor does not support severing and staying the claims of the '000 Patent. *See id*.

But Intellectual Ventures has not identified any other particular sources of the accused functionality. Rather, it intends to conduct discovery on this issue. *Id*.

The Court is not persuaded that this factor weighs against a stay, as argued by Intellectual Ventures. A contention that Southwest possibly uses or has used other companies or technologies does not amount to identifying other sources of the accused functionality. *See GreatGigz Sols., LLC v. CHRISTUS Health*, No. 6:21-cv-1310-ADA, 2022 WL 22869797, at *3 (W.D. Tex. Sept. 12, 2022) (holding that plaintiff's argument "that its 'allegations against Defendant are not limited to only their use of [the manufacturer's] systems,'" without any "specific information," cannot rebut the application of the customer-suit exception's third factor).

And, so, other providers' contributions to Southwest's accused systems – insofar as any exist and could not be litigated in the Delaware Action – would not undermine the Delaware Action's ability to resolve the "major issues" of the '000 Patent claims. *Spread Spectrum*, 657 F.3d at 1358 ("[T]he manufacturer's case need only have the potential to resolve the 'major issues' concerning the claims against the customer – not every issue – in order to justify a stay of the customer suits." (quoting *Katz*, 909 F.2d at 1464)); *see Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*, Nos. 6:11-cv-234-LED-JDL & 6:11-cv-445-LED-JDL, 2012 WL 10816848, at *11 (E.D. Tex. May 30, 2012) ("Because 'the guiding principles in the customer-suit exception cases are efficiency and judicial economy,' it is necessary to evaluate the customer-suit exception in light of the ['000] action….").

The Court finds that this factor weighs in favor of a stay.

And, because all three factors favor a stay, the Court finds that the '000 Patent claims should be severed and stayed under the customer-suit exception.

## II. Traditional Stay Factors

Even if the customer-suit exception did not apply, the Court finds that the traditional stay factors warrant severing and staying the '000 Patent claims until the Delaware Action is resolved.

**A. Whether a stay will unduly prejudice Intellectual Ventures.**

Intellectual Ventures argues that a stay will cause it undue prejudice.

First, it argues that staying the '000 Patent claims will unfairly delay its ability to vindicate its patent rights. *See* Dkt. No. 129 at 11. But this argument is based on Intellectual Ventures' assertion of other unknown possible accused infringing devices and not on whether the patent rights regarding the actual accused device, the AvioCast, will be adjudicated in the Delaware Action. As noted above, the resolution of the Delaware Action will likely resolve the major issues of infringement regarding the '000 Patent, including invalidity of the '000 Patent's claims. A stay would avoid the need to duplicate the litigation regarding alleged infringement of the '000 Patent by the AvioCast.

Also, an invalidity determination may be dispositive of any action based on other sources of the accused functionality. Once such issues are resolved in the Delaware Action, there may be little or nothing for this Court to resolve.

And, in any event, "the interest in timely enforcement is 'present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion.'" *CyWee*, 2018 WL 4002776, at *3 (citing *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015)).

Second, Intellectual Ventures argues the ‘000 Patent issues in the Deleware Action will prejudice Intellectual Ventures because it will not be able to address issues related to Southwest along with all related issues. *See* Dkt. No. 129 at 11-12. Intellectual Ventures also argues that litigating the ‘000 Patent claims in Delaware – a forum Intellectual Ventures did not choose – would force Intellectual Ventures to “transport documentary evidence of Southwest’s use of the infringing technology, which Southwest has represented to be in Texas, not Delaware.” *Id.* at 12.

But Intellectual Ventures has not explained why evidence of Southwest’s use of AvioCast would be needed in a lawsuit between Intellectual Ventures and AvioVision, to which Southwest is not a party. Southwest’s use of the technology would be litigated in the severed claim, if necessary, once the Delaware Actions involving the underlying technology are resolved. *See Kirsch*, 2021 WL 4555803, at *5 (finding that a plaintiff is not unduly prejudiced by a stay where “the bulk of the relevant evidence will come from the Manufacturer of an accused product – not a customer”).

And, so, the Court is not convinced that Intellectual Ventures will be so prejudiced by a stay such that one should not be granted, and the Court finds that this factor weighs in favor of a stay.

**B. Whether a stay will simplify the issues.**

As to the second factor, Intellectual Ventures argues that severing and staying the ‘000 Patent claims will not promote efficiency or simplicity because this will result in adding additional parallel proceedings instead of simplifying the litigation in which

Intellectual Ventures is a party. *See* Dkt. No. 129 at 11-12. Intellectual Ventures argues that fragmenting this case into separate actions would reduce judicial efficiency and force Intellectual Ventures into multiple matters instead of one matter. *See id.* at 11.

The Court disagrees with Intellectual Ventures' assertion that severing and staying the '000 Patent claims will result in a net loss of efficiency. As explained above, on the record before the Court, it appears that the Delaware Action will lead to "resolution of the major issues" in the '000 Patent claims. *Costco*, 2022 WL 1037114, at *3 (quoting *Katz*, 909 F.2d at 1464). Those issues could be. and should be, resolved in the Delaware Action prior to addressing the same issues in this matter.

Intellectual Ventures is correct that severing and staying the '000 Patent claims from this matter will result in yet another case in which Intellectual Ventures is a party, which does add complexity to the litigation in which Intellectual Ventures is involved. But such complexity is outweighed by the efficiency of resolving the major issues once – in the Delaware Action – instead of twice.

And, so, the Court finds that this factor favors a stay.

To the extent that Intellectual Ventures may, in a severed case, be able to establish other accused devices with the functionality that forms the basis of infringement of the '000 Patent, the severed case will also be simplified after resolution of the Delaware Action because the Delaware Action will necessarily require claim construction and claim validity determinations for the claims of the '000 Patent.

**C. Whether discovery is complete and a trial date has been set.**

Discovery is not complete, and the discovery period does not close until July 2027, *see* Dkt. No. 131. Although claim construction briefing has begun, no *Markman* hearing has yet occurred. *See Costco*, 2022 WL 1037114, at *4. And, although a trial date was set before the case was transferred to this Court, *see* Dkt. No. 53, a date for trial before this Court has not been reset since the transfer, *see* Dkt. No. 131.

And, so, this factor weighs in favor of a stay.

## III. <u>Severance Factors</u>

For the reasons explained above, the Court finds that consideration of "public and private factors" weighs in favor of severing the '000 Patent claims. *Rolls Royce*, 775 F.3d at 680. Any delay or inconvenience would be outweighed by avoiding inconsistent and duplicative litigation of the '000 Patent claims. And nothing suggests that severance would lead to "inconsistent judgments" between the '000 Patent claims and the other patent claims in this lawsuit. *Cf. Defense Distributed v. Bruck*, 30 F.4th 414, 428 (5th Cir. 2022).

And, so, severance will promote judicial economy.

## Conclusion

For the reasons explained above, the Court finds that severing the '000 Patent claims from this case and staying them until the resolution of the Delaware Action is warranted under the customer-suit exception and the traditional stay factors.

And, so, the Court GRANTS the motion to sever and stay [Dkt. No. 121]. And the Court DENIES Intellectual Ventures's request to conduct limited discovery regarding other possible accused functionality.

The Clerk of Court is directed to assign a separate cause number to the severed action – consisting of the '000 Patent claims from this lawsuit and, specifically, Count VII (Southwest's Infringement of U.S. Patent No. 11,032,000) of the Amended Complaint for Patent Infringement [Dkt. No. 97] – and assign the severed action to the presiding United States District Judge and the undersigned United States Magistrate Judge.

Southwest asks the Court to stay the severed action pending the resolution of the Delaware Action. The Court is not opposed to the relief that Southwest seeks, but, rather than stay the severed action, the Court will administratively close it. The age of a case continues to accrue if it is merely stayed, but, if it is administratively closed, the time is tolled, and the case does not age. And, so, the Court determines that the severed action should be, and will be, administratively closed. The Clerk of the Court is instructed to – after opening the new, severed action – submit JS-6 form to the Administrative Office, thereby removing the severed action from the statistical records. Nothing in this order shall be considered a dismissal or disposition of the severed action.

The parties must promptly inform the Court of the disposition of the Delaware Action upon its resolution. To that end, the parties must file, in the severed action, a written joint status report every 60 days (starting from the date of this order) or

within 14 days of final disposition of the Delaware Action (whichever is earlier), to notify the Court regarding the status of the disposition of the Delaware Action.

SO ORDERED.

DATED: September 3, 2026

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE